UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTL FCSTONE MARKETS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>AGRO SANTINO OOD,<br><br>    Defendant. | Case No. 1:20-cv-02658<br><br>**COMPLAINT** |

Plaintiff, INTL FCStone Markets, LLC ("FCStone") by and through its attorneys, DLA Piper LLP (US), for its Complaint against Defendant, Agro Santino OOD ("Agro Santino"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1. This is an action to recover payment of monies due under an Agreement which was executed by FCStone and Agro Santino (the "Agreement").

2. Under the Agreement, Agro Santino owes FCStone $1,315,821.95 plus interest, attorney's fees, costs and expenses. Agro Santino has refused to satisfy its payment obligations leaving FCStone no choice but to initiate legal proceedings to enforce its contractual rights.

## PARTIES

3. Plaintiff, INTL FCStone Markets, LLC ("FCStone" or "Plaintiff"), is a financial services firm specializing in commodity trading, primarily in base and precious metals, energy, textiles, and grains, organized under the laws of Iowa. FCStone's sole member is FCStone Group, Inc., a Delaware corporation with its principal place of business in Kansas City, Missouri.

1

4.      Defendant, Agro Santino OOD ("Agro Santino" or "Defendant"), is an agricultural trade company specialized in the production of cereals, food oils and industrial crops, organized under the laws of Bulgaria with its principal place of business in Bulgaria.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) in that this is a civil action between a citizen of Delaware and Missouri and a citizen or subject of a foreign state, Bulgaria, and the amount in controversy exceeds $75,000, exclusive of interest and cost.

6.      Under the Agreement, Agro Santino submitted to personal jurisdiction in New York in connection with the claim asserted in this action:

> Any judicial action arising out of, resulting from or in any way relating to this Agreement, the Confirmation for any Transaction or any Related Agreement or any alleged breach or default under the same . . . shall be brought only in a state or federal court of competent jurisdiction located in the State of New York, in the Borough of Manhattan in New York City.

(Agreement § 8.6, a true and correct copy of which is attached as Exhibit 1).

7.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(3) because there is no district in which an action may otherwise be brought as provided in 28 U.S.C. § 1391, Agro Santino is subject to the Court's personal jurisdiction with respect to this action, and the Agreement designates the federal and state courts in Manhattan as the exclusive forum for disputes.

## FACTUAL ALLEGATIONS

A.   **The Agreement Between FCStone and Agro Santino**

8.   On September 12, 2017, Agro Santino and FCStone (each a "Party" and collectively the "Parties") entered into the Agreement to govern Transactions related to swaps and over-the-counter derivatives in commodities markets.[1]

9.   The Parties agreed that the Agreement and any Transaction entered into under the Agreement would be governed by, construed, and enforced in accordance with the laws of the State of New York without regard to the principles of conflict of laws.  (Ex. 1, § 8.6).

10.   Under the Agreement, Agro Santino entered into a Transaction by requesting that FCStone execute a swap or over-the-counter derivative transaction on behalf of Agro Santino.  The parties agreed that they would be "legally bound by the terms of each Transaction from the moment they agree to those terms (whether orally or otherwise)." (*Id.* at § 1.5.).

11.   Each Transaction was confirmed by a "Confirmation to Counterparty via email outlining the commercial terms of such Transaction." (*Id.*).  All Confirmations were deemed "accepted" unless the counterparty disputed the Confirmation within two business days of receipt. (*Id.*).

---

[1] Under Section 1.2 of the Agreement:

> Capitalized terms . . . are defined in hereto, or, if not defined in Exhibit A hereto, have the meanings given in the 2006 ISDA Definitions published by ISDA and, as applicable, the 2005 ISDA Commodity Definitions published by ISDA, the 1998 FX and Currency Option Definitions published by ISDA, the Emerging Markets Traders Association and The Foreign Exchange Committee, and any other definitions specified in the relevant Confirmation for such Transaction, as published by or in conjunction with ISDA (collectively, the "Definitions"), except that any references to 'Swap Transactions' in the Definitions will be deemed to be references to 'Transactions.' The Definitions are incorporated by reference in, and made part of, this Agreement and each relevant Confirmation as if set forth in full in this Agreement and such Confirmation.

Accordingly, capitalized terms in this Complaint otherwise undefined shall have the meaning assigned to them by this Section 1.2 of the Agreement.

12. Agro Santino was required to make payments on Transactions on the due date specified in each Confirmation. (*Id.* at § 2.1).

13. As security for Agro Santino's "position for each Transaction," the Agreement allowed FCStone to request Agro Santino "pay [FCStone] an amount of cash calculated by [FCStone] in its sole discretion" (an "Initial Margin"). (*Id.* at § 2.3). Under the Agreement, FCStone had sole discretion to calculate the Initial Margin amount for each Transaction, and Agro Santino was required to pay the Initial Margin amount on the day such Transaction is initiated. (*Id.* at § 2.4).

14. The Agreement further required Agro Santino to pay "Variation Margin" on a daily basis, as further security, in an amount calculated by FCStone in its sole discretion. (*Id.*). Section 2.4 says that:

> If [FCStone] provides notice by 11.00 am New York time on any Business Day to [Agro Santino] that a payment of Variation Margin is required, [Agro Santino] shall pay such Variation Margin by 5:00 pm New York time on the same Business Day. If [FCStone] provides any such notice after 11:00 am New York time on a Business Day, [Agro Santino] shall pay the Variation Margin specified in such notice by 12:00 pm New York Time on the next Business Day. (*Id.*).

15. Agro Santino agreed to pledge and granted FCStone "a first priority continuing security interest in, lien on and right of set-off against all Margin transferred or received from [Agro Santino]." (*Id.* at § 2.5).

**B.   Events of Default Under the Agreement**

16. Under the Agreement, an Event of Default may arise upon "the failure of either Party . . . to make payment as required or perform any obligations." (*Id.* at "Exhibit A, Definitions"). Notably, "the failure of [Agro Santino] to make a payment of Variation Margin within the timeframe required by Section 2.4 shall constitute an immediate Event of Default with or without demand by" FCStone. (*Id.*).

4

17.     The Agreement described the steps to be taken by the Performing Party to enforce its rights under the Agreement upon an Event of Default by the other Party for failure to make a payment. These steps included giving written notice (a) designating "an Early Termination Date with respect to any or all Transactions outstanding at the time immediately preceding the Early Termination Date," (Ex. 1, § 5.1), and (b) setting forth the Net Settlement Amount, (*id.* at § 5.3). The Agreement described in detail how the Performing Party should calculate the Net Settlement Amount. The Agreement also explained how the Performing Party may proceed upon the Defaulting Party's failure to satisfy its obligations by the Early Termination Date. (*See, e.g.*, *id.* §5.4).

18.     The Agreement provided that "[i]f a party fails to remit any amount payable by it when due, interest on such unpaid portion shall accrue at the Default Interest Rate from (and including) the due date to (but excluding) the actual date of payment" ("Default Interest"). (*Id.* at § 2.8). The Default Interest Rate is defined as "means a rate equal to the cost to the Party to whom interest is owed (as such cost is certified by such Party, without proof or evidence of any actual cost) if such Party were funding the relevant amount plus 1% per annum, but in no event exceeding the maximum rate permitted by applicable Law." (*Id.* at "Exhibit A, Definitions").

C.      **Agro Santino's Defaults Under the Agreement**

19.     Up until August 2018, FCStone and Agro Santino worked cooperatively under the Agreement. Agro Santino executed various transactions with and through FCStone in accordance with the Agreement. Agro Santino did not object to any Transaction Confirmation sent by FCStone or to any Transaction executed or entered into under the Agreement. Agro Santino was complying with its obligations under the Agreement to pay the required Margin as calculated by FCStone.

20. Towards the end of August 2018, Agro Santino suffered substantial losses on its open positions due to volatility in the market.

21. Thereafter, FCStone notified Agro Santino of its obligation to make a Variation Margin payment of $1,332,195.19 under Section 2.4 of the Agreement.

22. Agro Santino informed FCStone that it was not going to make the Variation Margin payment of $1,332,195.19.

23. On September 12, 2018, FCStone sent Agro Santino written notice of an Event of Default due to Agro Santino's failure to make the Variation Margin payment of $1,332,195.19 in accordance with the Agreement (a true and correct copy of which is attached as Exhibit 2). In the same written notice, FCStone informed Agro Santino that FCStone was designating an Early Termination Date of September 14, 2018, with respect to all outstanding transactions in response to Agro Santino's failure to make the Variation Margin payment of $1,332,195.19. (Ex. 2). With this written notice, FCStone provided Agro Santino with a Daily Statement, dated September 11, 2018, setting forth detailed information regarding the open positions in Agro Santino's account with FCStone, including the positions' net market value, Agro Santino's cash balance, and the calculation of the funds due to FCStone. (*Id.*).

24. Agro Santino did not make any payment in response to the September 12, 2018 notice.

25. Following Agro Santino's failure to pay, FCStone liquidated Agro Santino's open positions and set-off the amount of the proceeds of the liquidation against the full amount owing to FCStone in accordance with the Agreement. (*See* Ex. 1, §§ 2.2, 5.1, 5.4).

26. On September 18, 2018, FCStone sent Agro Santino written notice of a Net Settlement Amount under the Agreement of $1,315,821.95 and requested Agro Santino to pay the

full Net Settlement Amount no later than close of business on September 19, 2018, under the Agreement.

27.     FCStone has attempted to resolve this matter in good-faith. Agro Santino still did not pay and has not made any payments to FCStone up until this day.

28.     No portion of the amounts due under the Agreement has been forgiven or otherwise reduced.

29.     Default Interest on the amount payable is accruing and due as must be calculated according to the Default Interest Rate contained in the Agreement.  (*See* Ex. 1, § 2.8).

30.     Under the Agreement, the Net Settlement Amount includes "all reasonable damages, losses, and out-of-pocket expenses, including legal fees, incurred by the Performing Party by reason of terminating or liquidating the Terminated Transactions pursuant to the Early Termination Date."  (*Id.* at "Exhibit A, Definitions").

**D.     Injunction in Bulgaria**

31.     On March 2, 2020, FCStone initiated proceedings for emergency relief against Agro Santino before the Sofia (Bulgaria) City Court, private civil case no. 2665/2020, 6th panel, Civil Department.  That day, the Sofia City Court granted FCStone's requested relief in the form of an injunction order to freeze Agro Santino bank accounts in Bulgaria up to the total claimed amount of $1,509,905.69, comprising the amounts due to FCStone, including interest, as of the date of that filing.

32.     FCStone paid BGN 269,027 (approximately $160,151.00) as a guarantee required by the Sofia City Court in connection with the grant of the injunction.  The injunction order requires FCStone to initiate proceedings within New York and provide evidence of these proceedings on or before April 2, 2020.

## COUNT I
### (Breach of Contract)

33. Plaintiff repeats and realleges the allegations made in paragraphs 1 through 32 of their Complaint, as if fully set forth herein.

34. The Agreement constitutes a valid, binding and enforceable contract between Agro Santino and the FCStone.

35. Defendant Agro Santino breached the Agreement by its failure to pay amounts due and owed.

36. FCStone has fully performed all things required of it and all things it was legally entitled to do under the Agreement, including providing Agro Santino with timely written notice that an Event of Default had occurred, designating an Early Termination Date with respect to all outstanding transactions in response to Agro Santino's default, and computing and noticing a Net Settlement Amount of $1,315,821.95.

37. Agro Santino has not made any payments to FCStone as demanded and required and up until this day continues to breach the Agreement by its failure to remit any payment on amounts due and owed.

38. As a direct and proximate result of Agro Santino's breaches of the Agreement as described above, FCStone has suffered, and will continue to suffer, monetary damages in an amount to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

    a. Awarding Plaintiff damages for breach of contract in an amount to be determined but in excess of $1.3 million exclusive of interest and costs;

  b. Awarding Plaintiff reasonable attorneys' fees, costs, and interest pursuant to remedies at law; and

  c. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: March 30, 2020
   New York, New York

**DLA PIPER LLP (US)**

By: /s/ *Jeffrey D. Rotenberg*
Jeffrey D. Rotenberg
Marc A. Silverman
Caroline A. Fish
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500 (Phone)
(212) 335-4501 (Fax)
jeffrey.rotenberg@us.dlapiper.com
marc.silverman@us.dlapiper.com
caroline.fish@us.dlapiper.com

*Attorneys for Plaintiff*