UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTL FCSTONE MARKETS, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>AGRO SANTINO OOD,<br><br>　　　　　　　Defendant. | Case No: 1:20-cv-02658-JMF<br><br>**STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1** |

　　　　Pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff INTL FCStone Markets, LLC ("FCStone"), by and through its undersigned attorneys, submits the following Statement of Material Facts in connection with its motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure:

　　　　1.　　FCStone is a financial services firm that specializes in commodity trading, primarily in base and precious metals, energy, textiles, and grains. Compl. ¶ 3. It is a Delaware corporation, organized under the laws of Iowa with its principal place of business in Kansas City, Missouri. *Id.*

　　　　2.　　Defendant Agro Santino OOD ("Agro") is an agricultural trade company that specializes in the production of cereals, food oils, and industrial crops. Compl. ¶ 4. It is a Bulgarian corporation, organized under the laws of Bulgaria with its principal place of business in Bulgaria. *Id.*

3. In September 2017, Agro opened a Swap and Over-the-Counter ("OTC") Derivatives Account with FCStone. *See* Ex. 1[1]; Compl. ¶ 8.

4. To open this Account, Agro completed an Account Opening Application (the "Account Application"). *See* Ex. 1.

5. The Account Application included the applicable Terms of Business ("TOB"), dated September 12, 2017. Ex. 1, at 20; Compl. ¶ 8.

6. The TOB defines the scope of the parties' Agreement as follows: "[T]his Agreement (including all exhibits and annexes hereto), all Confirmations, the Account Application, and all documents incorporated by reference therein form a single agreement between the parties" (together, the "Agreement"). Ex. 1, at 20 § 1.3. Documents incorporated expressly into the Agreement include, for example, "the 2006 ISDA Definitions published by ISDA and, as applicable, the 2005 ISDA Commodity Definitions published by ISDA, [and] the 1998 FX and Currency Option Definitions published by ISDA, the Emerging Markets Traders Association, and The Foreign Exchange Committee." *Id.* at 20 § 1.2.

7. The TOB defines "Transaction" as "a 'swap,' including any 'foreign exchange swap' and 'foreign exchange forward' . . . that the Parties may enter into from time to time after the date of this Agreement" ("Transaction"). Ex. 1, at 20 § 1.1.

8. The TOB provides that Agro can enter into a Transaction by requesting that FCStone execute a swap or over-the-counter derivative transaction on behalf of Agro. *See* Ex. 1, at 20 § 1.5; Compl. ¶ 10.

---

[1] Exhibits cited "Ex." are attached to the Declaration of Jeffrey D. Rotenberg, dated November 27, 2020.

9. The parties agreed that they would be "legally bound by the terms of each Transaction from the moment they agree to those terms (whether orally or otherwise)." Ex. 1, at 20 § 1.5; Compl. ¶ 10.

10. Under the TOB, each Transaction was confirmed by a "Confirmation to Counterparty via email outlining the commercial terms of such Transaction." Ex. 1, at 20 § 1.5; Compl. ¶ 11.

11. Under the TOB, all Confirmations were deemed "accepted" unless the counterparty disputed the Confirmation within two business days of receipt. Ex. 1, at 20 § 1.5; Compl. ¶ 11.

12. Under the TOB, Agro was required to "make each payment or delivery specified in each Confirmation to be made by it . . . on the due date." Ex. 1, at 21 § 2.1; Compl. ¶ 12.

13. "As security" for Agro's "position for each Transaction," the TOB allowed FCStone to "request [Agro] to pay [FCStone] an amount of cash calculated by [FCStone] in its sole discretion as 'Initial Margin'" (an "Initial Margin"). Ex. 1, at 21 § 2.3; Compl. ¶ 13.

14. The TOB provides that Agro "shall" make "[p]ayment of Initial Margin for a Transaction . . . on the day such Transaction is initiated." Ex. 1, at 21 § 2.3; Compl. ¶ 13.

15. The TOB further provided that "[a]s further security" for Agro's "position for each Transaction," Agro "shall pay to [FCStone a] daily variation margin . . . calculated by [FCStone] in its sole discretion ('Variation Margin')." Ex. 1, at 21 § 2.4; Compl. ¶ 14. Specifically, Section 2.4 says that:

> If [FCStone] provides notice by 11.00 am New York time on any Business Day to [Agro] that a payment of Variation Margin is required, [Agro] shall pay such Variation Margin by 5:00 pm New York time on the same Business Day. If [FCStone] provides any such notice after 11:00 am New York time on a Business Day, [Agro] shall pay the Variation Margin specified in such notice by 12:00 pm New York Time on the next Business Day.

Ex. 1, at 21 § 2.4.

16. The TOB states that Agro "hereby pledges to [FCStone], as security for its obligations hereunder and under all Transactions, and grants [FCStone] a first priority continuing security interest in, lien on and right of set-off against all Margin transferred or received by [FCStone] hereunder." Ex. 1, at 21 § 2.5; Compl. ¶ 15.

17. Under TOB, Agro warranted that: (1) "[i]t has made its own independent decision to enter into each Transaction and as to whether such Transaction is suitable or appropriate for it based upon its own judgment and upon advice from its advisors . . . as it has deemed necessary"; (2) "[i]t is capable of assessing the risks and merits of and understanding, and understands and accepts, the terms and conditions and risks of that Transaction"; and (3) "[i]t is capable of assuming, and assumes, the risks of the Transaction." Ex. 1, at 23 § 3.1(i), (l), (m).

18. In the "Additional Agreements – ISDA 2012 Dodd-Frank Supplement" portion of the Agreement, Agro designated that "Schedule 3 of the ISDA 2012 DF Supplement" applied to its "ability to evaluate transactions with [FCStone] and make trading decisions" and confirmed that "[FCStone has] no duty to act in your best interests and we are not assessing the suitability of the Transaction for you." Ex. 1, at 37.

19. According to the Agreement, FCStone executed instructions given by the persons named in the Agreement, who were expressly authorized to give trading instructions and execute transactions. *See* Ex. 1, at 12–13.

20. Under the "Executives, Officers, Managers, Trusts and General Partners" portion of the Account Application, Agro designated Stanislav Goranov Georgiev and Mladen Krasimov Antinov as Executives of Agro. Ex. 1, at 5, 6.

21. Under the "Board of Directors or General Assembly" portion of the Account Application, Agro designated Stanislav Goranov Georgiev and Mladen Krasimov Antinov as "members of the Board of Directors/Governors or General Assembly." Ex. 1, at 9.

22. Under the "Authorized Traders" portion of the Account Application, Agro designated Stanislav Goranov Georgiev and Mladen Krasimov Antinov as Authorized Traders, specifically, "individuals employed by the entity that can provide trading instructions." Ex. 1, at 7.

23. Under the "Empowered Individuals" portion of the Account Application, Agro designated Stanislav Goranov Georgiev and Mladen Krasimov Antinov as Empowered Individuals, specifically, "individuals functioning as Empowered Individuals as evidenced in the Board Resolution" of the Account Application. Ex. 1, at 8.

24. Under the "Board Resolution" portion of the Account Application, Agro designated Stanislav Goranov Georgiev and Mladen Krasimov Antinov as "authorized to carry out all of the powers set forth herein, and bind [Agro] to transactions and agreements." Ex. 1, at 12.

25. The Board Resolution further states that:

- Agro "has full power and authority under applicable law and its Governing Documents to undertake investments and transactions . . . at [Agro's] sole election: (a) . . . Swap and over-the-counter (OTC) or cleared derivatives *in all product classes*, including caps, floors, collars, and options, and *any other products* defined by US or non-US regulations as a 'swap' . . . ";

- Agro "has full power and authority under applicable law and its Governing Documents . . . to establish accounts, and execute agreements and related documentation in furtherance of undertaking such transactions . . . ";

- "Resolved" that Agro "has determined that investments and transactions in Swaps and Over-the-Counter (OTC) Products and Futures and Exchange-Traded Options are suitable and appropriate for [Agro]";

- "Resolved" that the "following individuals . . . Stanislav Georgiev [and] Mladen Antonov are authorised to carry out all the powers set forth herein, and bind the [Agro] to transactions and agreements, until [Agro] issues written revocation

5

> instructing that a previously Authorized Individual(s) is no longer authorized by [Agro] to act and confirms such revocation is received by [FCStone]";
>
> - "Resolved" that "[t]he Officers of [Agro] and its Empowered Individuals [Stanislav Georgiev and Mladen Antonov] are authorized to give oral or written instructions on behalf of [Agro] in furtherance of purchases, sales, delivery of property, or all other transactions required to consummate transactions and agreements contemplated herein to the fullest extent and to take all actions necessary or desirable in connection with any [Agro] account, to receive requests and demands for additional margin, notices of intention to sell or purchase any instrument and other notices and demands of whatever nature and to receive and acquiesce in the correctness of notices, statements of account and other records and documents relating to transactions in the account(s). This enumeration of specific authority shall not limit any other authority of the Empowered Individuals."

*See* Ex. 1, at 12–13 (emphasis added).

26. Under the "Acknowledgement Form" portion of the Account Application, Agro "acknowledge[d] that . . . INTL FCStone Financial Inc. and INTL FCStone Markets, LLC respectively, are relying on the information herein as the basis of establishing one or more Customer accounts. The undersigned certifies, represents and warrants that all information . . . provided is true and accurate."  Ex. 1, at 15.

27. Under the TOB, Agro "acknowledge[d] and agree[d] that it is bound by the elections made . . . in the Account Application."  Ex. 1, at 20 § 1.3.

28. Under Exhibit A to the TOB, an "Event of Default" occurs upon "[t]he failure of either Party . . . to make payment as required or perform any obligations . . . "  Ex. 1, at 32 (Exhibit A); Compl. ¶ 16.

29. Under Exhibit A to the TOB, "the failure of [Agro] to make a payment of Variation Margin within the timeframe required by Section 2.4 shall constitute an immediate Event of Default with or without demand by [FCStone]."  Ex. 1, at 32 (Exhibit A); Compl. ¶ 16.

30. Under Section 5.1(b) of the TOB, "upon an Event of Default," a Performing Party may "[u]pon written notice to the Defaulting Party . . . designate in such written notice an Early

Termination Date with respect to any or all Transactions outstanding at the time immediately preceding the Early Termination Date." Ex. 1, at 25 § 5.1(b); Compl. ¶ 17.

31. Under Section 5.3 of the TOB, "[u]pon the occurrence or designation of an Early Termination Date pursuant to Section 5.1(b), the Performing Party shall compute and shall notify the Defaulting Party of the Net Settlement Amount." Ex. 1, at 25 § 5.3; Compl. ¶ 17.

32. The Net Settlement Amount includes "all reasonable damages, losses, and out-of-pocket expenses, including legal fees, incurred by the Performing Party by reason of terminating or liquidating the Terminated Transactions pursuant to the Early Termination Date." Ex. 1, at 32 (Exhibit A); Compl. ¶ 30.

33. The TOB provides that "[i]f a party fails to remit any amount payable by it when due, interest on such unpaid portion shall accrue at the Default Interest Rate from (and including) the due date to (but excluding) the actual date of payment" ("Default Interest Rate"). Ex. 1, at 22 § 2.8; Compl. ¶ 18.

34. The Default Interest Rate is defined as "a rate equal to the cost to the Party to whom interest is owed (as such cost is certified by such Party, without proof or evidence of any actual cost) if such Party were funding the relevant amount plus 1% per annum, but in no event exceeding the maximum rate permitted by applicable Law." Ex. 1, at 32 (Exhibit A); Compl. ¶ 18.

35. The TOB provides that "[t]his Agreement and any Transaction, including any Confirmation thereof, entered into pursuant to this Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of New York without regard to principles of conflict of laws." Ex. 1, at 28 § 8.6; Compl. ¶ 9.

36. The TOB states that

> Any judicial action arising out of, resulting from or in any way relating to this Agreement, the Confirmation for any Transaction or any Related Agreement or any

7

alleged breach or default under the same . . . shall be brought only in a state or federal court of competent jurisdiction located in the State of New York, in the Borough of Manhattan in New York City.

Ex. 1, at 28 § 8.6; Compl. ¶ 6.

37. The Agreement was executed by Agro on September 19, 2017. *See* Ex. 1, at 13, 30; Compl. ¶ 8.

38. Agro executives, Stanislav Goranov Georgiev and Mladen Krasimov Antinov, signed each portion of the Agreement where signatures were required, including: The Board Resolution, the Acknowledgement Form, the Terms of Business, and the Additional Agreements – ISDA 2012 Dodd-Frank Supplement. *See, e.g.*, Ex. 1, at 13, 15, 30, 38.

39. The parties' Agreement constitutes a valid, binding, and enforceable contract between Agro and FCStone. *See* Answer ¶ 24.

40. Agro executed Transactions as evidenced by the following Confirmations:

|     | Date          | ID Number |
| --- | ------------- | --------- |
| 1.  | June 4, 2018  | 2158742   |
| 2.  | June 4, 2018  | 2159520   |
| 3.  | June 7, 2018  | 2183258   |
| 4.  | June 14, 2018 | 2234443   |
| 5.  | June 14, 2018 | 2234919   |
| 6.  | June 14, 2018 | 2235434   |
| 7.  | July 30, 2018 | 2519576   |
| 8.  | July 30, 2018 | 2519556   |
| 9.  | Aug. 9, 2018  | 2580886   |
| 10. | Aug. 9, 2018  | 2582912   |
| 11. | Aug. 10, 2018 | 2589043   |
| 12. | Aug. 10, 2018 | 2587435   |
| 13. | Aug. 10, 2018 | 2589030   |
| 14. | Aug. 13, 2018 | 2600626   |
| 15. | Aug. 13, 2018 | 2599068   |
| 16. | Aug. 13, 2018 | 2598564   |
| 17. | Aug. 13, 2018 | 2598305   |
| 18. | Aug. 14, 2018 | 2606300   |
| 19. | Aug. 14, 2018 | 2606240   |

| | | |
|---|---|---|
| 20. | Aug. 16, 2018 | 2623154 |
| 21. | Aug. 16, 2018 | 2623923 |
| 22. | Aug. 16, 2018 | 2625053 |
| 23. | Aug. 16, 2018 | 2623264 |
| 24. | Aug. 16, 2018 | 2623959 |
| 25. | Aug. 16, 2018 | 2625025 |
| 26. | Aug. 17, 2018 | 2633469 |
| 27. | Aug. 17, 2018 | 2632157 |
| 28. | Aug. 20, 2018 | 2641956 |
| 29. | Aug. 20, 2018 | 2642067 |
| 30. | Aug. 20, 2018 | 2642508 |
| 31. | Aug. 20, 2018 | 2642524 |
| 32. | Aug. 20, 2018 | 2642552 |
| 33. | Aug. 20, 2018 | 2643501 |
| 34. | Aug. 21, 2018 | 2650974 |
| 35. | Aug. 21, 2018 | 2651979 |
| 36. | Aug. 21, 2018 | 2653493 |
| 37. | Aug. 22, 2018 | 2659743 |
| 38. | Aug. 22, 2018 | 2660913 |
| 39. | Aug. 22, 2018 | 2659747 |
| 40. | Aug. 23, 2018 | 2671272 |
| 41. | Aug. 23, 2018 | 2671265 |
| 42. | Aug. 23, 2018 | 2671231 |
| 43. | Aug. 23, 2018 | 2669350 |
| 44. | Aug. 23, 2018 | 2669334 |
| 45. | Aug. 23, 2018 | 2669461 |
| 46. | Aug. 24, 2018 | 2679623 |
| 47. | Aug. 24, 2018 | 2677827 |
| 48. | Aug. 24, 2018 | 2678788 |
| 49. | Aug. 24, 2018 | 2679599 |
| 50. | Aug. 24, 2018 | 2679913 |
| 51. | Aug. 24, 2018 | 2684187[2] |
| 52. | Aug. 27, 2018 | 2689580 |
| 53. | Aug. 27, 2018 | 2689600 |
| 54. | Aug. 27, 2018 | 2689584 |
| 55. | Aug. 27, 2018 | 2689604 |

*See* Ex. 2.

---

[2] Trade ID Number 2684187 (Global ID 1630204) resulted from the expiration of an In The Money Knock-In Euro Option, with Confirmation date of March 22, 2018 (Confirmation Code 1630205) with a Pricing Date/ End Date of August 24, 2018.  *See* Ex. 2.

9

41. Agro did not object to any Transaction Confirmation sent by FCStone or to any Transaction executed or entered into under the Agreement. Compl. ¶ 19.

42. In the end of August 2018, Agro suffered substantial losses on its open positions. *See* Exs. 3, 4; Compl. ¶ 20.

43. As provided under Section 2.4 of the TOB, FCStone notified Agro of its obligation to make a Variation Margin payment of $1,332,195.19 under Section 2.4 of the TOB. *See* Ex. 5; Ex. 1, at 21 § 2.4; Compl. ¶ 21.

44. Agro did not make the Variation Margin payment of $1,332,195.19. Compl. ¶ 22; Answer ¶ 12 ("Agro Santino declined to make payment as demanded by Plaintiff").

45. On September 12, 2018, FCStone gave Agro written notice of an Event of Default. Ex. 5; Compl. ¶ 23. In the same written notice, FCStone informed Agro of an Early Termination Date of September with respect to all outstanding transactions under the Agreement as of September 14, 2018. *Id.* With this written notice, FCStone provided Agro with a Daily Statement, dated September 11, 2018, setting forth detailed information regarding the open positions in Agro's account with FCStone, including the positions' net market value, Agro's cash balance, and the calculation of the funds due to FCStone. *Id.*

46. Agro "declined to make payment" in response to the September 12, 2018 notice. Answer ¶ 14 ("Agro Santino declined to make payment as demanded by Plaintiff"); Compl. ¶ 24.

47. In accordance with Section 2.2 of the TOB, FCStone liquidated Agro's open positions and set-off the amount of the proceeds of the liquidation against the full amount owing to FCStone, due to Agro's refusal to make payment. *See* Ex. 1, at 21 § 2.2; Compl. ¶ 25.

48. On September 18, 2018, FCStone sent Agro written notice of a Net Settlement Amount under the Agreement of $1,315,821.95 and requested that Agro pay the full Net

Settlement Amount no later than close of business on September 19, 2018 in accordance with the parties' Agreement. Ex.6; Compl. ¶ 26.

49. Agro did not make any payment in response to FCStone's September 18, 2018 letter. Compl. ¶ 27; Answer ¶ 17 ("Agro Santino has not made any payment to Plaintiff").

50. On March 2, 2020, the Sofia City Court, Civil Division, Bulgaria granted FCStone's application for an "interim remedy" of "attachment of the bank accounts of the future defendant [Agro] up to the amount of the required security" as the "court finds the request to be equitable in this part." Ex. 7, at 2; Compl. ¶ 31. The court granted attachment of Agro's accounts "in view of securing future lawsuits totaling USD 1,509,905.69" and to "ensure the enforcement of the claim." Ex. 7, at 1. To secure an "order for an injunction for a future claim," as here, FCStone was required to show: "the claim must be admissible and probably equitable, the security must be needed (there must be an interest in the security) and the proposed security must be admissible, suitable and appropriate to the security need." *Id.* at 1–2. Under this order, FCStone was required "to file the future claim" within "one month" of the order and "present evidence" of such filing to the Court. *Id.* at 2.

51. Agro filed an appeal of that decision. *See* Ex. 8, at 1. Argo argued that Agro's representative had acted to Agro's detriment by engaging in certain unauthorized transactions. *Id.* at 1. Having considered all the merits of the case, the Court of Appeal in Bulgaria upheld the decision of the Sofia City Court, Civil Division, Bulgaria, and confirmed the preliminary injunction. *Id.* at 1–2.

52. Under Bulgarian law, the preliminary relief described above was granted on the condition that a claim be filed before the competent court within one month from the preliminary measure. *See* Ex. 7, at 2; Compl. ¶ 32. The competent court for purposes of Bulgarian law is New

York according to Section 8.6 of the TOB, which states that the parties' Agreement is governed by New York law and that any judicial action arising therefrom must be brought in a state or federal court in New York. Ex. 1, at 28 § 8.6.

53. FCStone initiated this action in the U.S. District Court for the Southern District of New York on March 30, 2020. ECF No. 1.

54. On August 7, 2020, the Ministry of Justice and European Legal Integration for the Republic of Bulgaria effected service of process on Agro in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. *See* ECF Nos. 14, 14-2.

55. On November 6, 2020, Agro filed its answer and asserted two counterclaims against FCStone for breach of contract and unjust enrichment/monies had and received. ECF No. 21.

Dated: November 27, 2020  
      New York, New York

Respectfully submitted,

**DLA PIPER, LLP (US)**

By: */s/ Jeffrey D. Rotenberg*  
    Richard F. Hans  
    Jeffrey D. Rotenberg  
    Marc A. Silverman  
    Caroline A. Fish  
    1251 Avenue of the Americas  
    New York, New York 10020  
    (212) 335-4500  
    richard.hans@us.dlapiper.com  
    jeffrey.rotenberg@us.dlapiper.com  
    marc.silverman@us.dlapiper.com  
    caroline.fish@us.dlapiper.com

    *Attorneys for Plaintiff INTL FCStone Markets, LLC*