UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTL FCSTONE MARKETS, LLC,<br><br>                              Plaintiff,<br><br>                    v.<br><br>AGRO SANTINO OOD,<br><br>                              Defendant. | No. 20-cv-02658 (JMF) |

## FIRST AMENDED ANSWER AND COUNTERCLAIMS OF AGRO SANTINO OOD

Defendant Plaintiff Agro Santino OOD ("Agro"), by its attorneys, Seward & Kissel LLP, as and for its Answer to the Complaint ("Complaint") of Plaintiff Intl FCStone Markets, LLC ("FCStone" or "Plaintiff"), states and asserts defenses as follows:

1. Denies the allegations of paragraph 1, except that Plaintiff purports to bring this action to recover monies Plaintiff alleges are due under the document referenced therein.

2. Denies the allegations of paragraph 2.

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3.

4. Admits the allegations of paragraph 4.

5. States that Plaintiff purports to invoke the Court's jurisdiction in paragraph 5 as set forth therein.

6. States that the allegation of paragraph 6 is a legal conclusion to which no response is required and otherwise refers the Court to the document referenced therein for the contents thereof.

7. Denies the allegations of paragraph 7, except states that Plaintiff purports to invoke venue and personal jurisdiction as set forth therein and refers the Court to the document referenced therein for the contents thereof.

8. Denies the allegations of paragraphs 8 to 18, except refers the Court to the document referenced therein for the contents thereof.

9. Denies the allegations of paragraph 19, except that Stanislov Georgiev ("Georgiev"), an agent of Agro, executed various transactions with and through Plaintiff, that Agro complied with its obligations, to the extent any existed, and refers the Court to the correspondence and document referenced therein for the contents thereof.

10. Denies the allegations of paragraph 20, except that open positions in the Agro account experienced losses as a consequence of unauthorized trading.

11. Denies the allegations of paragraph 21, except refers the Court to the communications and document referenced therein for the contents thereof.

12. Denies the allegations of paragraph 22, except states that Agro declined to make payment as demanded by Plaintiff due to the subject trades being made without authorization, a fact that was known, or which should have been known, to Plaintiff.

13. Denies the allegations of paragraph 23, except refers the Court to the communications and document referenced therein for the contents thereof.

14. Denies the allegations of paragraph 24, except refers the Court to the communication referenced therein for the contents thereof, and further states that Agro declined to make payment as demanded by Plaintiff due to the subject trades being made without authorization, a fact that was known, or which should have been known, to Plaintiff.

15. Denies the allegations of paragraph 25, except that Plaintiff improperly liquidated Agro's open positions and set-off the amount of the proceeds of the liquidation against what Plaintiff purports to be the amount it is due under the document referenced therein, and refers the Court to the document referenced therein for the contents thereof.

16. Denies the allegations in paragraph 26, except refers the Court to the notice referenced therein for the contents thereof.

17. Denies knowledge or information sufficient to form a belief as to the first sentence of paragraph 27 and states that Agro has not made any payment to Plaintiff because no payments are owed to Plaintiff.

18. Denies the allegations of paragraph 28, and further states that Agro has not made any payment to Plaintiff because no payments are owed to Plaintiff.

19. Denies the allegations of paragraph 29.

20. Denies the allegations of paragraph 30, except refers the Court to the document referenced therein for the contents thereof.

21. Denies the allegations of paragraph 31, except refers the Court to the documents and proceedings referenced therein for the contents thereof.

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32, except refers the Court to the order referenced therein for the contents thereof.

23. With respect to paragraph 33, Agro incorporates its response to paragraphs 1 through 32 as though fully set forth herein.

24. Admits the allegations of paragraph 34.

25. Denies the allegations of paragraph 35.

26. Denies the allegations of paragraph 36.

27. Denies the allegations of paragraph 37, and further states that Agro has not made any payments to Plaintiff because no amounts are owed to Plaintiff.

28. Denies the allegations of paragraph 38.

## FIRST DEFENSE

29. Plaintiff has failed to state a claim upon which relief may be granted.

## SECOND DEFENSE

30. The transactions in dispute were caused to be executed by an Agro agent who lacked authority to bind Agro in respect of those transactions.

31. The transactions in dispute were not authorized by Agro.

32. Plaintiff knew or should have known that the transactions in dispute were not authorized by Agro.

33. Accordingly, Agro is not responsible for any losses in respect of such unauthorized transactions.

## COUNTERCLAIMS

Defendant Plaintiff Agro hereby counterclaims against Plaintiff FCStone, and states as follows:

## FACTS

34. Agro is a producer of cereals, oilseeds, and industrial crops.

35. On or about September 18, 2017, Georgiev requested that the Agro board of shareholders approve the opening of an account with FCStone for the purpose of providing the business greater stability by entering hedging transactions involving commodities produced—that is to say, commodities cultivated and harvested each year—by Agro (the "Account"). A copy of this email is attached as Exhibit 1.

36. Later that day, the Agro board of shareholders approved a resolution authorizing Georgiev and Mladen Antonov ("Antonov") to open the Account. A copy of that resolution (the "Agro Board Resolution") is attached as Exhibit 2.

37. The Agro Board Resolution expressly limited the scope of Georgiev and Antonov's authority to bind Agro in respect of the Account. *See* Ex. 2. Specifically, the Agro Board Resolution provided that: (1) the Account was to be used only to enter transactions that hedged commodities that are produced by Agro ("Hedging Trades"), and (2) Georgiev and Antonov's authority to trade within the Account was limited to entering Hedging Trades. *See id*. Agro's board of shareholders expressly prohibited Georgiev and Antonov from entering, and binding Agro in respect of, any other trades. *See id*.

38. In September 2017, Georgiev and Antonov approached FCStone about opening the Account. On or about September 19, 2017, Georgiev and Antonov signed a document to establish a swap and over-the-counter derivatives account with FCStone (the "Agreement"). Attached as Exhibit 3 is a copy of the Agreement.

39. The Agreement—a document drafted by FCStone—expressly incorporates the "Account Application" therein. *See* Ex. 3 at 20 and § 1.3.

40. The Agreement defines "Account Application" to mean "all documentation delivered to [FCStone] and its Affiliates in connection with the opening of accounts, including all know-your-customer information, as may be updated by Counterparty from time to time." *Id*. at 31.

41. The Agreement also expressly incorporates "documents referred to in [the] Agreement and the Account Application[.]" *Id*. at Ex. 3 at 20; *see also id*. at § 1.3.

42. The Account Application required Georgiev and Antonov to provide certain "supporting documents" to FCStone, including a copy of the Agro Board Resolution providing authorization. *Id*. at (i).

43. FCStone included a similar requirement at Section 3.3. of the Account Application ("Agreement to Furnish Information"), which provides:

> Counterparty agrees to deliver to [FCStone], at or before the execution of this Agreement, a certified copy of a Certificate of Authority, Incumbency and Specimen Signatures and Resolutions adopted by Counterparty's Board of Directors, or relevant committee of the Board of Directors, authorizing the execution, delivery and performance of this Agreement and the Transactions contemplated hereunder.

*Id*. at 24.

44. Consistent with both Section 3.3 and the obligation to provide certain enumerated "supporting documentation," Georgiev and Antonov provided FCStone a copy of Agro Board Resolution. A copy of the emails transmitting the Agro Board Resolution to FCStone are attached as Exhibits 4 and 5. FCStone acknowledged receiving and reviewing the language of the Agro Board Resolution. Thereafter, Georgiev communicated with FCStone to devise a hedging plan. *See* Exhibit 6.

45. Because the Agro Board Resolution was referenced in the Agreement and was "documentation delivered to [FCStone] . . . in connection with the opening of [the Account]," Ex. 3 at 31, it became part of the Agreement, and the limitations imposed on Georgiev and Antonov's authority therein became terms of the Agreement.

46. Further, in the Account Application, which was expressly incorporated into the Agreement, Georgiev and Antonov certified that Agro's trading objective was for "hedging" "grain, oil, [and] seeds" commodities, but not "speculative" trading. *Id*. at 3.

47. The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") amended the Section 2(h) of the Commodity Exchange Act ("CEA") to provide for mandatory clearing of swaps to the extent required by the Commodity Futures Trading Commission ("CFTC"). The amendment, in conjunction with certain implementing rules issued by the CFTC, makes it unlawful for a person to engage in certain swap transactions unless the relevant swap is submitted

for clearing to a derivatives clearing organization. At the same time, Dodd-Frank created an exemption for certain qualifying "end-users" who would otherwise be subject to the clearing mandate.

48. Among the class of persons who qualify for the exemption are non-financial entities, like Agro, who use a swap "to hedge or mitigate commercial risk." *See* 17 C.F.R. § 50.50(a)(1). A swap is deemed to be used to "to hedge or mitigate commercial risk" when:

> "[The swap] is economically appropriate to the reduction of risks in the conduct and management of a commercial enterprise, where the risks arise from . . . [t]he potential change in the value of . . . commodities that a person owns, produces, manufactures, processes, merchandises, leases, or sells, or reasonably anticipates owning, producing, manufacturing, processing, merchandising, leasing, or selling in the ordinary course of business of the enterprise[.]"

*Id*. at § 50.50(c)(1).

49. In the Account Application, which was FCStone's document, Georgiev and Antonov certified that Agro qualifies for the "end user" exemption to the mandatory clearing requirements because it was "entering into swap transactions with [FCStone] solely for purposes of hedging or mitigating commercial risks as described in CFTC Regulation 50.50(c)." Ex. 3 at 43.

50. Additionally, the Account Application required Georgiev and Antonov to represent that Agro is an "eligible contract participant." *Id*. at 16. Specifically, the Account Application has a "Eligible Contract Participant Status" certification that states: "In order to enter into Transactions with [FCStone], applicable law requires [Agro], as an [FCStone] Customer transacting 'swaps' to represent that [Agro] qualif[ies] as an "eligible contract participant, as defined in Section la(18) of the [CEA]." *Id*. 17 U.S.C. § 1a(18)(A)(v) defines the term "eligible contract participant" to include "[an] entity [ ] that has a net worth exceeding $1,000,000; and [ ] enters into an agreement,

7

contract, or transaction in connection with the conduct of the entity's business or to manage the risk associated with an asset or liability owned or incurred or reasonably likely to be owned or incurred by the entity in the conduct of the entity's business."

51. Georgiev and Antonov completed the "Eligible Contract Participant Status" certification and represented that Agro is:

> A[n] . . . entity that has a net worth exceeding $1,000,000 and is entering into transactions with [FCStone] in connection with the conduct of its business or to manage the risk associated with an asset or liability owned or incurred or reasonably likely to be owned or incurred in the conduct of your business.

*Id*. at 17.

52. In Section 3.4, "[t]he [p]arties . . . agree[d] that [Agro] shall adopt all applicable Protocol elected by it in the Account Application and [Agro] shall provide all information required by the Protocol or [FCStone], in order to make such elections." *Id*. at 24.  This clause required any trading in the Account to be consistent with Georgiev and Antonov's elections in the Account Application, including its elections in respect of using the account for hedging but not speculative trades, Agro's qualification for the "end-user" exemption pursuant to 17 C.F.R. § 50.50(a)(1), and Agro's qualification as an "eligible contract participant" under 17 U.S.C. § 1a(18)(A)(v).

53. Despite (i) the express limitations imposed on Georgiev authority contained in the Agro Board Resolution, (ii) the Dodd-Frank "end user" exemption and CEA "eligible contract participant" representations that FCStone provided for and required in the Account Application, which put FCStone on further notice that Georgiev's trading was limited to Hedging Trades, and (iii) the Protocol requiring trading to be consistent with elections in the Account Application, including with the Dodd-Frank "end user" exemption and the "eligible contract participant" status elections, starting in March 2018 and continuing thereafter, FCStone executed speculative,

unauthorized trades entered by Georgiev in commodities Agro did not produce (the "Speculative Trades").

54. Georgiev had no authority to engage in the Speculative Trades on behalf of Agro, nor were the Speculative Trades permitted under the Agreement.

55. In August 2018, the Speculative Trades caused Agro to suffer substantial losses.

56. On September 12, 2018, FCStone liquidated the Account and retained the proceeds of that liquidation.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

57. Agro repeats, realleges and reiterates paragraphs 34 to 51 as though fully set forth herein.

58. FCStone breached the Agreement by executing the Speculative Trades.

59. FCStone's execution of the Speculative Trades violated: (i) the Agro Board Resolution, the terms of which were expressly incorporated into the Agreement and expressly prohibited the Speculative Trades, and (ii) Section 3.4 of the Agreement, which required the parties to act consistent with the elections made by Georgiev and Antonov in the Account Application.

60. FCStone also breached the Agreement by liquidating the Account and retaining the proceeds of the liquidation.

61. Section 5.1 ("Remedies Upon Event of Default") of the Agreement, which outlines the parties' remedies in the event of a default, did not permit such liquidation.

62. Alternatively, to the extent liquidation is deemed an available remedy, FCStone also breached the Agreement by liquidating the Account when no valid Event of Default by Agro, as defined by the Agreement, had occurred.

63. Given these breaches, FCStone is liable to Agro for damages in an amount to be determined at trial, but estimated to be the amount of the proceeds from Plaintiff's liquidation of the Account, exclusive of interest and costs, retained by FCStone.

### SECOND CAUSE OF ACTION
### (Unjust Enrichment/Monies Had and Received)

64. Agro repeats, realleges and reiterates paragraphs 34 to 51 as though fully set forth herein.

65. The Agro Board Resolution expressly prohibited Georgiev from using the Account to enter trades that did not hedge commodities produced by Agro as part of its business.

66. FCStone expressly requested and received the Agro Board Resolution, which expressly prohibited the Speculative Trades, a limitation highlighted by various elections made by Georgiev and Antonov as part of the account opening process.

67. FCStone knew Georgiev was not permitted to enter the Speculative Trades. Nevertheless, FCStone executed the Speculative Trades.

68. Given its knowledge that the Speculative Trades were not authorized, FCStone acted inequitably by executing the Speculative Trades and thereafter retaining proceeds from the liquidation of the Account after the Speculative Trades sustained loss.

69. Therefore, in the alternative to Agro's First Cause of Action—and to the extent the Agreement is silent as to the parties' obligations in the situation at bar—FCStone is liable for unjust enrichment/monies had and received.

WHEREFORE, Agro respectfully requests that the Court dismiss the Complaint in its entirety; deny each request for relief set forth in the Complaint; and enter judgment on the counterclaim in its favor and against FCStone as follows:

(a) Damages in an amount to be determined at trial but estimated to be the amount of the proceeds from Plaintiff's liquidation of the Account;

      (b)      Pre-judgment and/or post-judgment interest as provided for under applicable law;

      (c)      Such other and further relief as the Court deems just and proper.

New York, New York  
December 18, 2020

Respectfully submitted,

SEWARD & KISSEL LLP

By: _s/ Mark J. Hyland_____  
Mark J. Hyland  
Noah S. Czarny

One Battery Park Plaza  
New York, New York 10004  
(212) 574-1200

*Attorneys for Defendant Agro Santino OOD*

SK 29942 0002 8640907